UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| KARRY A. MALDONADO, | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | Civil No. 08-412-B-W |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| *Defendant* | ) | |

### REPORT AND RECOMMENDED DECISION[1]

In this Social Security Disability ("SSD") appeal, the plaintiff contends that the administrative law judge's decision is not supported by substantial evidence. I recommend that the court vacate the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520, *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff suffered from fibromyalgia and attention deficit hyperactivity disorder (ADHD), impairments that were severe but which, whether considered individually or in combination, did not meet or medically equal the criteria of any impairment listed in Appendix 1 to Subpart P, 20 C.F.R. Section 404 (the "Listings"), Findings 3-4, Record at 10-11; that she had the residual functional capacity to perform sedentary

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on June 19, 2009, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

work, except that her ADHD restricted her to unskilled work, Finding 5, *id.* at 12; that she was unable to perform her past relevant work, Finding 6, *id.* at 15; that, given her age (39 on the alleged date of onset of disability, a younger individual), high school education, work experience, and residual functional capacity, use of the Medical-Vocational Rules set out in Appendix 2 to Subpart P, 20 C.F.R. Section 404 (the "Grid") as a framework for decision-making led to the conclusion that there were jobs existing in significant numbers in the national economy that the plaintiff could perform, Findings 7-10, *id.*; and that she was, therefore, not under a disability, as that term is defined in the Social Security Act, at any time from the alleged date of onset through the date of the decision, Finding 11, *id.* at 16.  The Decision Review Board affirmed the decision, *id.* at 1-4, making it the final determination of the commissioner, 20 C.F.R. § 405.420.

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work.  20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.  The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual functional capacity to

perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## Discussion

The plaintiff first contends that the administrative law judge wrongly relied on an office record created by the plaintiff's treating physician that was dated before her alleged onset day. Statement of Specific Errors ("Itemized Statement") (Docket No. 8) at 2. She bases this conclusion on the following sentence of the administrative law judge's opinion:

> In sum, the above residual functional capacity assessment is supported by the opinion of Dr. Iver Nielson, the opinion of the claimant's treating physician, the claimant's activity level and the claimant's lack of follow-through of treatment recommendations which suggests that her condition is not as severe as the claimant asserts.

Record at 14-15.

I agree that the reference to the plaintiff's "treating physician" is most likely to a note of Barbara A. Vereault, D.O., dated September 25, 2006, even though the next sentence of the opinion begins, "At the same time, in November 2005." *Id*. at 14; *see id.* at 245-48 (page 247 is page 20 of Exhibit 6-F; see Record at 14). This note was created a mere five days before the alleged onset date of October 1, 2006. *Id*. at 8. Absent some evidence of a precipitating event during those five days – an unlikely occurrence given that the alleged disability arises from fibromyalgia,[2] ADHD, and chronic fatigue syndrome, *id.* at 11 – evidence of the extent of the plaintiff's ongoing work activity and her treating physician's opinion that she was "probably not disabled" very shortly before the alleged onset is in fact quite relevant to her claim. In addition, the administrative law judge discusses other evidence that supports his conclusion that the

---

[2] Fibromyalgia is defined as a "syndrome of *chronic* pain of musculoskeletal origin but uncertain cause." Stedman's Medical Dictionary (27th ed. 2000) at 671 (emphasis added). Mental impairments, like ADHD, "usually do not occur overnight." *Culbertson v. Shalala*, 30 F.3d 934, 939 n.4 (8th Cir. 1994). The only reasonable conclusion, in the absence of any contrary indication in the medical records, is that chronic medical conditions do not become disabling over a period of five days.

plaintiff had the residual functional capacity for sedentary work at the relevant time. *See, e.g., id.* at 10-15.

The plaintiff next challenges the administrative law judge's observation that the plaintiff's "activity level and the claimant's lack of follow-through of treatment recommendations . . . suggest[] that her condition is not as severe as the claimant asserts." *Id.* at 14-15. She asserts that this discounting of the plaintiff's reported symptoms is "contradict[ed]" by "Dr. Vereault's recommendations for Plaintiff to be as active as possible." Itemized Statement at 2-3.[3]

I fail to see any contradiction. It is not the recommendations of the plaintiff's treating physicians that are at issue here; it is the plaintiff's failure to comply with those recommendations. Before making this observation, the administrative law judge discussed at some length the plaintiff's medical treatment history, the forms that the plaintiff regularly filled out at Back in Balance with respect to the effects of her physical condition, her lack of "physical therapy, behavior therapy or other programs to treat her fibromyalgia[,]" her weight increase due to inactivity and her failure to maintain an exercise program "despite continued suggestions from her counselor that she could maintain more activity[,]" and her failure to attend a recommended "fibromyalgia group." Record at 13-14. The administrative law judge's conclusion on this point is supported by substantial evidence in the record.

The plaintiff next argues that the residual functional capacity assigned to her by the administrative law judge "does not take into consideration the Plaintiff's difficulties with fatigue." Itemized Statement at 3. She faults the administrative law judge for acknowledging "that the Plaintiff suffers from fatigue and that the fatigue is likely the result of fibromyalgia" yet

---

[3] If the plaintiff means to argue that she was, in fact, "as active as possible" while failing to follow any of these recommendations, she has not pointed to any medical evidence in the record that would support that conclusion.

failing "to discuss the impact of the Plaintiff's fatigue in assessing her residual functional capacity."  *Id.*  She cites no authority for her implicit argument that this "failure" requires remand to the commissioner.

The administrative law judge observed that "[i]t is likely that [the plaintiff's] increased weight and her lack of exercise as well as the combination of medication she takes have led to increased fatigue." Record at 14.  This observation immediately precedes the observation that the plaintiff "has not followed through with several treatment recommendations for improvement of fibromyalgia," *id.*, which certainly suggests that the administrative law judge considered the plaintiff's fatigue to be due to her decision not to follow through with treatment recommendations.  He then observed that "none of the claimant's treating sources have placed restrictions on her functional abilities" and that Dr. Iver Neilson, a reviewing physician for the state disability determination service, opined in March 2007 (well after the alleged date of onset) that "despite the claimant's fibromyalgia, she can perform the full range of light work except that she can never climb ladders."  *Id.*  While the administrative law judge acknowledged an unspecified level of "increased fatigue," he also discounted it for reasons adequately stated in the record.  It is not correct to state that he "[did] not take into consideration the Plaintiff's difficulties with fatigue."

The plaintiff next contends that the administrative law judge's determination that her ADHD "restricts her to only unskilled work on a sustained basis," *id*. at 12, is not supported by any evidence in the record.  Itemized Statement at 3-5.  She asserts that the administrative law judge found that she could perform unskilled work only "because she worked five hours per week in a semi-skilled (SVP-4) job." *Id*. at 5.

This assertion significantly understates the administrative law judge's consideration of the effects of the plaintiff's ADHD. There may well be "no medical support for the ALJ's finding that the Plaintiff's functioning in her part-time job was inconsistent with the limitations identified by Dr. Creech," *id.* at 5, but that is not the question posed by this appeal. The question, correctly (and less narrowly) stated, is whether the administrative law judge gave due consideration to the effects of the ADHD, which he found to exist, on the plaintiff's ability to work and whether the limitation he found to result is supported by substantial evidence in the record.

Considered from that appropriate point of view, the administrative law judge's opinion does discuss the possible limitations imposed on the plaintiff's ability to perform work-related tasks by her ADHD. Record at 11-12. He noted mild restrictions on activities of daily living and on social functioning. *Id.* He found moderate difficulties "[w]ith regard to concentration, persistence or pace," *id.* at 12, which must necessarily be the source of the limitation to unskilled work that he assigned due to the ADHD. A full paragraph addresses these difficulties and includes the observation that Dr. Creech "opined that the claimant was over-medicated." *Id.*

Dr. Creech, on whose report the plaintiff relies, stated that the pain and muscle relaxant medications the plaintiff was taking "can impact her attention and vigilance in a negative way." *Id.* at 204. The administrative law judge mentioned the plaintiff's then-existing part-time job, not to illustrate that this job was "inconsistent with the limitations identified by Dr. Creech," but rather to demonstrate that the plaintiff was able to perform part-time work that by its nature required concentration, persistence, and pace, however many hours per week the plaintiff performed it.

The psychiatric technique review form completed by a state-agency psychologist on March 26, 2007, found the plaintiff's ADHD to be non-severe. *Id*. at 214. Dr. Creech's report is undated, but it lists "date of service" as October 5 and November 9, 2006, and was reviewed by the state-agency psychologist, *id*. at 226, who noted evidence subsequent to Dr. Creech's two meetings with the plaintiff to the effect that she was working 26 hours per week and going to art class "which she enjoys," that her depression was controlled by medication, and that she complained of no ADHD symptoms on February 9, 2007. *Id*. But, the administrative law judge does not refer to the state-agency psychologist's report, and the next entry in the plaintiff's records from Penobscot Community Health Center ("PCHC" in the consultant's report) is a report of a psychiatric evaluation that assigned the plaintiff a Global Assessment of Functioning of 45, and noted "inability to stay on task." *Id*. at 233.

Combined with the administrative law judge's rather cursory treatment of Dr. Creech's report, the failure to mention either the state-agency psychologist's report or the results of the plaintiff's psychiatric evaluation that took place three months after that report was written gives me pause. Unlike the plaintiff, Itemized Statement at 5, I do not necessarily conclude that the administrative law judge engaged in a forbidden interpretation of raw medical data, but I am concerned that his decision ignores strong evidence of an impairment of the ability to concentrate or persist with a task that may be inconsistent with a limitation to unskilled work. Thus,

> [t]hese mental activities are generally required by competitive, remunerative, unskilled work:
>
> - Understanding, remembering, and carrying out simple instructions.
> - Making judgments that are commensurate with the functions of unskilled work – i.e., simple work-related decisions.
> - Responding appropriately to supervision, co-workers and usual work situations.
> - Dealing with changes in a routine work setting.

Social Security Ruling 96-9p, reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2008), at 160-61.

The administrative law judge did not indicate how and whether the plaintiff's ADHD affected the listed activities. He found that the plaintiff had "moderate difficulties" with concentration, persistence, or pace. Record at 12. If his finding that the plaintiff's ADHD "restricts her to only unskilled work on a sustained basis," *id.*, is meant as a finding that the moderate difficulties caused by the plaintiff's ADHD did not affect any of the mental activities required by unskilled work, that is not clear from the opinion.

The administrative law judge's underlying assumption that all sedentary work is unskilled – that "[t]he claimant's additional limitations do not limit [] substantially the requirements of sedentary work which is premised on unskilled work," Record at 15 – is not accurate. *See, e.g., Millhouse v. Astrue*, 2009 WL 763740 (M.D. Fla. Mar. 23, 2009), at *4 ("[M]oderate limitations in . . . concentration, persistence, or pace constitute greater restrictions than a limitation to unskilled work. . . . It is not apparent to me that a person with a moderate limitation in concentration, persistence, or pace could adequately perform all types of unskilled sedentary work. Accordingly, the law judge's . . . conclusion needed a reasonable explanation."); *Calderon v. Astrue*, 2009 WL 1357395 (C.D. Cal. May 12, 2009), at *5 (vocational expert testified that plaintiff limited to sedentary work with moderation limitations in understanding and remembering tasks, sustaining concentration and persistence, and adapting to workplace changes could perform "a couple of jobs in the national economy").

In this regard, I find persuasive the reasoned opinion of Judge Robinson of the Northern District of Texas when faced with very similar facts. There, the administrative law judge found that the plaintiff was capable of sedentary work and had moderate limitations in concentration,

persistence, and pace that relegated him to unskilled work. *Chapa v. Astrue*, 2008 WL 952947 (N.D. Tex. Apr. 8, 2008), at *5. The administrative law judge then applied the Grid to conclude that the plaintiff was not disabled. *Id.*

Judge Robinson observed:

> The defendant's position appears to be that the medical-vocational guidelines [the Grid] establish there are sufficient numbers of unskilled jobs available to the claimant to satisfy the defendant's burden at Step 5 because the Grids are limited only to the existence of unskilled jobs. Consequently, defendant argues the ALJ's determination that plaintiff was not disabled should stand since the jobs identified by the Grid are limited to unskilled jobs. . . .
>
> Here, the ALJ did not find the nonexertional impairments had no impact, nor did he find that they had an insignificant impact. As plaintiff argues, the ALJ ventured into the realm of vocational expert testimony. The Court agrees and finds this constituted reversible error. The ALJ made a determination that plaintiff's nonexertional mental impairments, in particular, his borderline intellectual abilities and his moderate impairment in the area of concentration, persisten[ce] and pace, limited the plaintiff to one to two step tasks. The ALJ further found this nonexertional impairment limited plaintiff to unskilled jobs. In making this determination, the ALJ, in effect, became a vocational expert. Whether plaintiff's moderate impairment in the area of concentration, persisten[ce] and pace limited plaintiff to one and two step jobs and whether such eroded the occupational base and to what degree it was eroded was a determination for a vocational expert. While the ALJ may be correct that jobs calling for simple and/or one to two step instructions may be unskilled sedentary jobs, such jobs also require an individual to perform repetitive tasks over an eight-hour work day. Plaintiff's nonexertional impairment of moderate limitation in the area of *concentration, persistence* and *pace*, could directly affect plaintiff's ability to remain attentive and concentrate. This could directly affect plaintiff's ability to perform simple sedentary work, such as assembly line work, unskilled in nature, which the ALJ found plaintiff capable of performing. It may be that a vocational expert can identify unskilled sedentary jobs which would not be affected by plaintiff's nonexertional limitations. It may also be that a vocational expert would find limitations in the area of concentration, persistence and pace, would affect such jobs and further erode the number of unskilled sedentary jobs available. Reversal and remand is required so a vocational expert can be called and can address the issue.

9

*Id*. at \*6 (emphasis in original; citations omitted). The same result is required here.

In a related argument, the plaintiff contends that the administrative law judge was required to rely on the testimony of a vocational expert, if he in fact used the Grid as a framework for decision-making, and yet never presented the vocational expert with a hypothetical question listing the mental and physical limitations from which he found the plaintiff to suffer. Itemized Statement at 5-6. The vocational expert was questioned only about the plaintiff's past and current work. Record at 38-41, 43, 46.

When the Grid is used as a framework the administrative law judge must either consult a vocational expert about the availability of jobs given the plaintiff's physical and mental impairments, *Burgos Lopez v. Secretary of Health & Human Servs.*, 747 F.2d 37, 42 (1st Cir. 1984), or demonstrate ample support in the record for the proposition that the significant nonexertional impairment at issue nonetheless only marginally reduces the occupational base, *Ortiz v. Secretary of Health & Human Servs.*, 890 F.2d 520, 524-26 (1st Cir. 1989).

There is no attempt to demonstrate such ample support in the administrative law judge's opinion.[4] He did not ask the vocational expert about the availability of jobs in the national economy, given the physical and mental limitations he assigned to the plaintiff. Instead, he relied on the assertion that "[t]he claimant's additional limitations do not limit [] substantially the requirements of sedentary work which is premised on unskilled work." Record at 15.[5] For the reasons already discussed, this assertion is insufficient to support the commissioner's burden at Step 5.

---

[4] At oral argument, counsel for the commissioner conceded that the administrative law judge could not have used the Grid as a framework but rather must necessarily have relied directly on it.

[5] Even where a claimant has been found to have a limited ability in one or more basic work activities that the administrative law judge concludes will not significantly erode the unskilled sedentary occupational base, Social Security Ruling 96-9p suggests that "it may be useful to consult a vocational resource." Social Security Ruling 96-9p, reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2008), at 161.

**Conclusion**

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the case remanded for further proceedings consistent with this opinion.

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 30th day of June, 2009.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge